# Exhibit A

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
MIDDLESEX SUPERIOR COURT

Docket # 2381CV01823

Dan Howitt, )
)
)
Plaintiff, )
v. )
)
Harvard University, )
)
Defendant. )
)

## COMPLAINT AND REQUEST FOR JURY TRIAL

1 – 1: Disability Reasonable Accommodation Request
1 – 1: Jurisdiction
2 – 2: Introduction
2 – 2: Violations
2 – 3: Parties
3 – 8: Facts
8 – 8: Relevant Context
8 – 11: Conclusion
11 – 11: Relief
11 – 11: Jury Trial Request
11 – 11: Affirmation

### DISABLILITY REASONABLE ACCOMMODATION REQUEST

I Dan Howitt the plaintiff: am a pro se litigant; receive Supplemental Security Income, Medicaid, and Supplemental Nutrition Assistance Program; have diagnosed severe Autism Spectrum Disorder and severe Major Depressive Disorder; therefore ask for leeway regarding civil-procedure; moreover ask for leeway regarding any missed statute-of-limitations due to the chronic disability-maltreatment and repeated retaliatory-maltreatment by the defendants, and the entailed chronic fear of escalated retaliation, and the entailed chronic worsening of my illnesses, which entailed incapacity to attempt to address this via the court.

### JURISDICTION

Middlesex Superior Court has jurisdiction over requests for damages regarding the below violations. The business in which the above violations occurred is headquartered in Cambridge, Massachusetts.

1

## INTRODUCTION

This is a complaint about the following violations, which I have been subjected to between 2/2015 – present.
2/2014, I began privately collaborating with some Harvard professors in my fields of work, and concurrently began auditing courses. I planned to apply to Harvard's Special Student program (non-degree graduate study) in the spring of 2015. I have a BA and MA in philosophy (Colgate), and did PhD level study in philosophy thereafter (Chicago).
Due to the accretional nature, and complexity, of this matter from 2014 to the present, I first, under Violations below, provide a list of the violations that occurred; and then under Facts, I provide the facts that are related to the violations; and then under Conclusion, I provide the violations of each defendant.

## VIOLATIONS

1. Violations of Title IX (Education Amendments 1972) 34 CFR 106.71 (retaliation)
2. Violations of Title II (Americans With Disabilities Act) 28 CFR 35.134 (retaliation)
3. Defamation
4. MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)
5. MGL c268 s13E (tampering with record, document or other object for use in an official proceeding)
6. MGL c268 s1 (perjury)
7. MGL c274 s3 (counseling or procuring felony; prosecution as accessory before fact or principal)
8. MGL c274 s4 (accessories after fact)
9. MGL c268 s6A (false written reports by public officers)
10. MGL c266 s37E (use of personal identification of another; identity fraud)
11. MGL c265 s43A (criminal harassment)
12. MGL c268 s13B (intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings).
13. MGL c265 s13A (assault or assault and battery)
14. MGL c31 s61A (police officer and firefighter health and physical fitness standards)
15. MGL c269 s13A (false reports to police officers)

## PARTIES

(1) I Dan Howitt am the plaintiff and am a resident of Cambridge, Massachusetts.
(2) Defendant, Leanne, a guest-services employee at Harvard Business School.
(3) Defendant, Blondie Cassell, a security employee at Harvard Business School.
(4) Defendant, Barbara Fees, a former catering manager at Harvard Business School.
(5) Defendant, John O'Connor, an operations department employee at Harvard Business School.
(X) The following employees of the Harvard police department:

Current employees:
(6) Defendant, chief Victor Clay
(7) Defendant, officer James Lawson
(8) Defendant, officer James Pignone
(9) Defendant, officer Charles Chalmers

2

(10) Defendant, officer Steve Fumicello
(11) Defendant, officer John Fulkerson
(12) Defendant, officer Wilmon Chipman
(13) Defendant, administrator Steven Catalano

Current to-be-named employees:

Past employees:
(14) Defendant, chief Francis Riley
(15) Defendant, officer Daniel Twomey (deceased)
(16) Defendant, officer Kevin Regan
(17) Defendant, officer Charles Hanson

(18) Defendant, Robert Iuliano, former general-counsel of Harvard.
(19) Defendant, Drew Faust, former president of Harvard.
(20) Defendant, Lawrence Bacow, current president of Harvard.
(21) Defendant, Katie Lapp, past executive vice president of Harvard.
(22) Defendant, Robert Neugenboren, a former dean at Harvard.

**FACTS**

1. 12/18/14, I emailed Harvard library director Suzanne Wones my complaint regarding the 2 weeks, 2-3 times a day, 6 days a week, of multifaceted sexual harassment by the then divinity school student Mohamad Jarada [Mohamad] of approximately 23 years old, and the several instances of religious harassment by his sister Hadel Jarada [Hadel; then PhD student of the Near Eastern Languages & Civilizations Department]. Mohamad's sexual harassment consisted of repeated touching of me, standing and sitting inches from me, repeated asking me on dates, repeated asking for my contact information, repeated seeking of me in all distant areas of the library (different floors and private rooms hundreds of yards away from where he was), repeated staring at my body while he was talking to me, repeated comments on my clothing, appearance, facial expressions, and personality, repeated statements "I don't approach women", repeated statements "It doesn't matter if one likes men or women", etc. Hadel's religious harassment: She asked me of my religion (Judaism), and then stated several times that I should convert to Islam, provided me with arguments about why, and referred me to several Islamic friends of hers in the library. Wones, regarding my complaints, referred me to dean Maritza Hernandez of the graduate school of education, which as I learned many years later was not the appropriate person nor department to process my complaint. I emailed my complaint to Hernandez on 2/15/15. Her assistant (name forthcoming) telephoned me and said that he (the assistant) is gay, and that Mohamad did nothing wrong. I conveyed this to Hernandez and she did not reply.

2. 12/29/14, Wones' assistant Brian Sutton emailed me that Hadel complained to him that I daily asked some people to talk quieter, and that I daily moved a chair from a different location for my use. Sutton stated that if I continued doing this I would be excluded from the library. I emailed Wones and Sutton that I politely ask 1-2 people a month to talk quieter after 30 minutes of their talking near me, that many people in the library make such requests daily, and that I use one of 30 empty chairs in the computer room for my use in another room. They emailed me that law students have priority over non-law students, that Hadel stated to them that she and Mohamad are law students, and that they therefore cannot ask either of them to discontinue their behavior toward me. Neither Hadel nor Mohamad were law students, nor enrolled in any law school courses.

3. 2/20/15, Harvard police officer James Lawson telephoned me and said: "You've been criminally harassing

3

and criminally staking Ms. Jarada"; "you contacted her department asking for her home address"; "you followed her home from Whole Food Somerville"; "you have no right to make the complaint that you did against her brother"; "if his parents learn that he is gay they might punish him because his family is Islamic"; "how would you like a no-trespass warning"; "you have no right to be here". I asked him what a "no-trespass warning" is and he did not answer. I conveyed to him Mohamad's sexual harassment of me, and he laughed over my voice loudly several times as I did. I conveyed to him that Hadel's above police-reports are proven false (via her department, via my email to her department, and via cameras at Whole Foods), and I stated that these are criminally false police-reports.

4. 2/23/15, my Widener Library access-card did not work; I went to the library office; director Steven Beardsley, after reading his computer about me, called the Harvard police; officers Steven Fumicello and Charles Marren confronted me; Fumicello, as witnessed by the staff, officer Marren, and surveillance video, engaged in 15 minutes of repeated threatened battery of me: "an act placing another in reasonable apprehension that force may be used is sufficient for the offense of criminal assault." I conveyed this via email, via email-letter-attachments, and via postal-mail, to chief Francis Riley, the then general-counsel Robert Iuliano, the then president Drew Faust, and the then vice-president Katie Lapp. No one replied.

5. 2/26/15, Harvard's philosophy department emailed me that they were notified of the no-trespass and stated that I was no longer permitted to take part in their courses. Professor Thomas Scanlon email-replied to me that he was forwarded Lawson's email to the department that states, "Mr. Howitt is a danger to the Harvard community" and "Mr. Howitt has been criminally harassing and criminal stalking Harvard students", and "Mr. Howitt has committed illegal discrimination against a gay male Harvard student".

6. 2/27/15, Sutton emailed me that I am no longer permitted to use the law library because he was told, "Mr. Howitt is a danger to the Harvard community", and "Mr. Howitt committed illegal discrimination against a gay male law student". He added, "I spoke with Detective Lawson by telephone and he said that he as a gay male and officer does not tolerate illegal discrimination against gay males at Harvard".

7. 3/10/15 – 3/21/16, I emailed and spoke with Harvard officer Daniel Twomey. I email-conveyed the above about Lawson, Hadel, and Mohamad to him, and to, via their own email addresses, the then chief Francis Riley, the then general-counsel Robert Iuliano, the then president Drew Faust, and the then vice-president Katie Lapp. Iuliano email-replied, "The chief of police has complete jurisdiction over this matter".

8. 6/8/15, Twomey conveyed to me via telephone, "You have autism and you could be a school-shooter. With the no-trespass warning we are covered in case you do something."

9. 7/8/15, Twomey emailed me that he spoke with my then-clinician Trevor Barese on 6/23/15, that my no-trespass will remain unchanged, and that chief Riley told me on 3/13/15 that I should find another school. Barese emailed me, "After hearing about your autism Sergeant Twomey thinks you could be a "school shooter"". 3/13/15, Riley in his office with Twomey present said to me that he would consider rescinding my no-trespass in the fall 2015. 7/8/15, Twomey emailed me that he would ask Riley about library use, and, "I wish you all the best as you're a nice and kind gentleman".

10. 3/2016, Twomey conveyed to me via telephone that I could use the business school campus for academic work.

11. 11/18/16, Twomey died after having terminal Stage IV pancreatic cancer for, as is publicly reported, "20 months" (that is, 3/18/15 – 11/18/16). 6/2/15, Twomey emailed me, "I'll be having a procedure done on Thursday at a hospital". MGL c31 s61A (police officer and firefighter health and physical fitness standards):

Accordingly, it is illegal for an officer to work on his or her own accord, and to be permitted to work, as an officer while terminally ill, and under medical care for the terminal illness. Terminal cancer, and threatment for terminal cancer, including treatment for the pain thereof, over 20 months, undermines the mental health, neurological health, and physical health of an officer such that the officer is no longer fit for duty. 3/16/16, Twomey's final email to me. 4/26/16, Regan emailed me requesting that I discontinue contacting Twomey.

12. 11/31/16, past dean Robert Neugenboren of Harvard's Division Of Continuing Education), emailed me, "I was told that you are a threat to the Harvard community", after his 11/23/16 email stating that he was "administratively withdrawing" me from Harvard because the Harvard police reported to him that the following applies to me: "the student has been arrested on allegations of serious criminal behavior, or has been formally charged by law enforcement authorities with such behavior [...]." Lawson reported the above to him. I appealed the matter and Neugenboren replied that he was rescinding the administrative-withdrawal, but that I was to "not interact with other students in the course", by which he clearly meant even off-campus, since I was already not using campus. He also stated, "I have also received complaints from others on campus about your numerous problematic emails, and if this continues it may be considered harassment ....". However, my emails, as discussed above and below, were professionally written emails to the relevant offices about my circumstance.

13. 10/5/17, I had a 4-5 minute friendly interaction with the catering director of the business school Barbara Fees in Hawes Hall. We exchanged simple and brief conversation about aspects of ourselves, including my telling her, in response to her inquiry, that I work in autism science, narrative non-fiction about autism, and have autism myself. During that time, I noticed that she was exceedingly suspicious, which contrasted with how she previously always waved to me and said hello in-passing. 10/10/17, a catering worker walked by where I was doing academic work, and I asked, on the behalf of an acquaintance, whether there are any caterer job-openings. 10/14/17, per Harvard police-report 2017-0002920A, officer Charles Chalmers' wrote that Fees conveyed to the campus security office (Securitas) that I caused her discomfort, that I was looking for her, that I asked her about a security guard, and that she was uncomfortable by how I do academic work in the same building-region of her office. Chalmers wrote that operation's employee John O'Connor is who presented this matter to the Harvard police.

14. 10/14/17, in Chalmers' aforementioned police-report, he states that I have autism, and speculates that it is the cause of some of the interpersonal problems that have arisen between me and some others on campus.

15. 11/8/17, without my knowledge, and postal-mailed to an incorrect address, a trespassing complaint was issued against me, Brighton District Court docket # 1708CR001045. However, the content of the complaint was of criminal-harassment and not trespassing.

16. 11/21/17, the summons for the aforementioned was returned by the post-office to the court, and the court notified officer Kevin Regan of this. He did not contact me via my Harvard registered email address nor telephone number. A default-warrant was issue against me from that date to 1/10/17. 1/6/17, I emailed Regan asking if my Harvard professor Theo Theoharis contacted him, and he email-replied about the above case and stated I should "surrender" myself to Cambridge District Court. He did not email me a copy of the summons. 1/8/21, via walking I traveled 2 hours roundtrip to that court to find that the case was not in that court. I emailed Regan and he replied that the case is in the Brighton court. 1/10/17, via walking I traveled 2 hours roundtrip to the Brighton court. The case was dismissed-prior-to-arraignment by the judge, who stated per the For The Record Audio, "He was just talking to people. There was no harassment. He should be permitted to resume using campus for his work and relationships." Regan did not rescind the no-trespass.

17. 1/5/18, the aforementioned Theoharis met with Regan at the police department. 1/12/18, Theoharis

5

emailed me, "he said you are a danger to the Harvard community", and, "your autistic behavior against a woman at the Business School is an example".

18. 5/21/18, my complaint against Mohamad was handled by Harvard's Office For Dispute Resolution, and director Bill McCants provided me the result of his investigation which was to dismiss my complaint. He added that my no-trespass was "objectively" justified because of how on 12/1/14 I emailed Hadel's department asking if I could postal-mail her a letter to the department (I intended to ask her if we could try to resolve the matter between her, her brother, and me).

19. 2018, at different times throughout, and via document-proof, I presented to Lawson, Regan, and others, except Hadel and Mohamad (I discontinued communicating with them in 11/2014), that Hadel had been for considerable time, and still was, engaging in serious academic fraud at a school in Finland by presenting herself as having a PhD from Harvard, and as a "post doctoral student". I presented this to her Finland school, which substantiated my complaint and took action against her. As of proof, Hadel did not receive a degree from Harvard until 5/2021.

20. 9/21/18, Lawson, via a multitude of felonies, used a subpoena-document of the Middlesex District Attorney's Office (MDA), altered it in a multitude of ways, and submitted it to google-legal under the deception that it was being submitted to google-legal by the MDA. The subpoena-document also lacked the required two MDA true-signature approvals of the subpoena. The subpoena requested the user-information for a particular gmail address that was used to professionally convey the above about Hadel to the above relevant persons.

21. 10/11/18, I obtained the aforementioned subpoena from google-legal.

22. 1/2019, I presented the aforementioned crimes of Lawson to assistant district attorney Graham Van Epps, Faust, Iuliano, Lapp, Regan, et al.

23. 2/1/19, Lawson emailed me a "Cease & Desist" email in which he conveyed that I had been engaging in "criminal harassing" and "criminal stalking" against Hadel for many years, and listed symptoms of mental illness as being the cause of this, and that if I did not discontinue doing so, he would charge me with the above crimes; and he listed the penalties for the crimes.

24. 2/2015 – 10/2021, my no-trespass was extended in yearly increments by Lawson, Regan, and officer Charles Hanson, and for non-campus reasons: ( a) 8/2016, I presented my work on a Munchhausen-By-Proxy Syndrome case that I uncovered to a Winston-Salem, NC officer, which by 2017 resulted in the 20 year old woman extricating herself from her abusive mother; the officer as a part of his investigative process contacted the Harvard police to verify who I am; Lawson extended my no-trespass by 1 year citing that an expert would be needed to verify my case; world renowned expert Dr. Marc Feldman emailed Lawson supporting my case; Lawson ignored this. (b) 11/2017, I sued my landlord, Harvard employee Amy Thompson, for a multitude of health/building/fire/civil code violations; and she reported me to the Harvard police. (c) 8/2019, I filed a Massachusetts Commission Against Discrimination complaint against 2 of 20+ employees of a bookstore for terrorizing me with anti-autism and anti-male psychological abuse over 1 year; the owner of the bookstore reported me to the Harvard police when I was standing on a busy nearby corner among hundreds of passers-by. (d) 8/2020 to 10/2021, Hanson emailed me that no-trespasses are not being reconsidered during the pandemic.

25. 10/21/21, current chief Victor Clay rescinded my no-trespass after speaking in 9/2021 with my Harvard law professor Lloyd Weinreb, and in 10/2021 with my Harvard literature professor Theo Theoharis. Theoharis emailed me, "The chief said there should have not been a no trespass and it was issued because those involved

do not understand autism nor me".

26. 2/8/23, I videoed the security guard of the business school Blondie Cassell verbally abusing me for several minutes with repeated demands that I leave campus, repeated statements that I've been "trespassed", criticisms of my behavior, mockery, etc. I informed her of the above about Clay, and she disputed it. She engaged in the same conduct against me on 4/20/22 for several minutes, during which time I told her the above about Clay. Via email I reported her to Clay, Securitas, and the Harvard police, and later dean Datar and associate dean Cunningham. No disciplinary action was taken against her.

27. 4/24/23, as is shown in my legal recording, which I often take for clinical purposes with my clinician, employee Leanne of guest-services at the business school, despite my friendly rapport with her since 2015 (usually once per month visits of 5-15 minutes), said the following after a 1 minute discussion that I provided to her about my struggle with autism, after which I joked for 5 seconds that maybe my life would be better if I had more hair. With a tone of serious mockery she immediately said: "No. It's because you're crazy. You're crazy". She has been aware that I have autism and comorbid depression since 2018 via my discussions with her.

28. 4/27/23, I emailed a professionally expressed complaint about Leanne to business school dean Srikant Datar. Assistant dean Jean Cunningham email-replied that John O'Connor would be contacting me to discuss the matter. I email-replied declining to communicate with O'Connor because of his aforementioned involvement in my no-trespass. O'Connor then, I later learned, reported my complaint against Leanne to the Harvard police, which resulted in their immediately issuing a no-trespass against me.

29. 5/12/23, I emailed officer Chipman with my request that he notify the philosophy department that my no-trespass was rescinded. He did not reply despite that, as I leaned on 5/25/23 (below), a second no-trespass was issued shortly after 4/27/23.

30. 5/23/23, I emailed Harvard police administrator Steve Catalano about the 5/22/23 witnessed assault at the business school campus. I stated that I pass by the area of the assault usually twice a day, and provided him with my observations about the location of the assault, and social activity that had been occurring in that area. He did not reply despite that, as I leaned on 5/25/23 (below), a second no-trespass was issued shortly after 4/27/23.

31. 5/25/23, officer James Pignone confronted me while I was watching the graduation ceremony from afar at the business school campus. He said that a security guard told him that I have a no-trespass, and that a no-trespass letter was postal-mailed to me 1 month prior to my "Channing Street" address. I said that address is an incorrect past and current address. I gave him my current postal-address. He twice told me "Don't be surprised if you get a summons for a criminal complaint in your mailbox." I said that would be "entrapment" since I was unaware of a no-trespass. He twice said that I would be "escorted" off campus. I walked 200 yards with 2 officers following me to the bridge over the highway that I've taken on my way home since 2014.

32. 5/25/23, I telephoned Clay via the cell-phone number that he provided to me in 2021. He said that he was unaware of the reason for the no-trespass, that he would inquire into it, and indicated, based on the account that I provided to him, that it would be rescinded on the basis that it was previously. He asked me to email him my above video of Cassell. I told him I did several months ago, and that clearly my emails to him are removed by officer John Fulkerson. He then said, "You better text it to me then", which I did. I called him on 5/27/23 to inquire into the matter, and he said that he was told to not talk to me because I filed a civil complaint in this court against the university. 6/4/23, I texted him my criminal complaint application against Lawson.

7

33. 5/26/23, this court at my request sent my first Complaint (2381CV01532) to Clay, the Harvard police general-mailbox, Fulkerson, Harvard's general-counsel, Bacow, et al. 1/2019 onward, I presented the aforementioned crimes of Lawson to Van Epps, Faust, Iuliano, Lapp, Regan, et al.

34. 5/27/23, I telephoned Clay and he said that he was told to not communicate with me because I filed a Complaint. I said that I would withdraw my complaint if he would rescind the no-trespass. He said "That would be coercion". Actually it was an attempt at civil-settlement.

35. 6/2/23, I telephoned Clay's assistant, officer John Fulkerson, for the purpose of inquiring about the status of my case, at the start of which I politely said, "this call is being recorded". He yelled, "You cannot do that. Recording calls is illegal", and disconnected. I called again and began by saying that I was not recording the call. He disconnected. His provided a false statement of the law.

36. 6/14/23, I received a postal-letter from Fulkerson stating that his department received "complaints" about me, and that I was therefore issued a no-trespass. He further stated, notwithstanding that I have not telephoned anyone at the university since 2016, at which time (between 2014-2016) I had 5 brief conversations with 3 departments for particular purposes regarding my circumstance, that if I telephone anyone at the university "for the purpose of harassment and annoyance" "it is a crime punishable by fine and imprisonment" and "will subject you to arrest and prosecution". Notwithstanding, MGL 269 14A does not entail "fine and imprisonment", nor "arrest and prosecution". He provided false statements of the law. Moreover, his department did not receive "complaints" about me, regarding the aforementioned 4/2023 – 5/2023 time-period, but rather, I filed complaints against the aforementioned 2 people. This was also the case from 2014 onward; and any complaints against me during that time were retaliatory.

37. Other: (a) Hadel and Mohamad were not disciplined for their sexual harassment and religious harassment. Hadel was not disciplined for her academic fraud. Leanne was not disciplined for her disability harassment. Cassell was not disciplined for her criminal harassment. (b) I have interacted with 200+ other people on campus (students of all levels, professors, staff, guests, etc) since 2014, and there have not been problems between them and me. Included are my rapports with business school guards Nicole Kirby, Emir Velagoshti, Kumar Dangi, Andy Garczynski, Jason (Jay), and Ken Perro, and Harvard Yard guard Mary Riedle: Daily many faculty/staff/students/visitors/etc liberally talk with them; many of them would ask me to walk around with them during their duty-tours; we would talk about each others lives; I became friends with Nicole off-campus; Kumar asked me to take part in a project of his; etc.

**RELEVENT CONTEXT**

1. 4/26/07, Twomey, as of video-proof, violated: MGL c263 s2 (arrest on false pretense); MGL c268 s6A (false written reports by public officers or employees); and MGL c268 s1 (perjury). He and colleagues of his arrested 4 Harvard students protesting FBI director Robert Mueller's speech via a false pretense, which he then conveyed in writing via his police-report. He was not disciplined by the police department, nor the university, nor the Middlesex District Attorney's Office. No one filed a criminal complaint application against him.

2. 2007, Riley and Regan were proven to have stolen substantial money over substantial time from the university via their use of university credit-cards intended only for on-duty vehicle gasoline use. Moreover, Riley and Regan were proven to have repeatedly, over many years, usurped police vehicles for their personal use for substantial time, and over substantial distances, including out of state (Nebraska, Vermont, etc).

3. 2020, Riley was forced into retirement, Regan was fired, and Hanson resigned, via the investigation of the

student news-source of Harvard, The Crimson. The investigation was about inter-department, and police vs community, racism, sexism, favoritism, and retaliation.

**CONCLUSION**

The aforementioned Facts establish that the following violations occurred:

1. Defendant Lawson violated Title IX (Education Amendments 1972) 34 CFR 106.71 (retaliation)

2. Defendant Lawson violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

3. Defendant Lawson engaged in defamation.

4. Defendant Lawson violated MGL c268 s13E (tampering with record, document or other object for use in an official proceeding

5. Defendant Lawson violated MGL c268 s1 (perjury)

6. Defendant Lawson violated MGL c268 s6A (false written reports by public officers)

7. Defendant Lawson violated MGL c266 s37E (use of personal identification of another; identity fraud)

8. Defendant Lawson violated MGL c265 s43A (criminal harassment)

9. Defendant Lawson violated MGL c268 s13B (intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings).

10. Defendant Riley violated MGL c274 s3 (counseling or procuring felony; prosecution as accessory before fact or principal)

11. Defendant Riley violated MGL c274 s4 (accessories after fact)

12. Defendant Riley violated MGL c31 s61A (police officer and firefighter health and physical fitness standards)

13. Defendant Regan violated MGL c274 s3 (counseling or procuring felony; prosecution as accessory before fact or principal)

14. Defendant Regan violated MGL c274 s4 (accessories after fact)

15. Defendant Regan violated MGL c265 s43A (criminal harassment)

16. Defendant Regan engaged in defamation.

17. Defendant Leanne violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

18. Defendant Clay violated Title II (Americans with Disabilities Act) 28 CFR 35.134 (retaliation)

19. Defendant Clay violated MGL c274 s4 (accessories after fact)

20. Defendant Clay violated MGL c268 s13B (intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings)

21. Defendant Cassell violated MGL c265 s43A (criminal harassment)

22. Defendant Fees violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

23. Defendant Fees violated MGL c269 s13A (false reports to police officers)

24. Defendant O'Connor violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

25. Defendant Chalmers violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

26. Defendant Pignone violated MGL c268 s13B (intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings).

27. Defendant Fumicello violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

28. Defendant Fumicello violated MGL c265 s13A (assault or assault and battery)

29. Defendant Twomey violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

30. Defendant Twomey violated Title IX (Education Amendments 1972) 34 CFR 106.71 (retaliation)

31. Defendant Twomey engaged in defamation.

32. Defendant Hanson violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

33. Defendant Hanson violated Title II (Americans With Disabilities Act) 28 CFR 35.134 (retaliation)

34. Defendant X of the Harvard police (a currently unknown officer) violated Title II (Americans with Disabilities Act) 28 CFR 35.134 (retaliation)

35. Defendant Fulkerson violated MGL c268 s13B (intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings)

36. Defendant Fulkerson violated MGL c268 s6A (false written reports by public officers)

37. Defendant Fulkerson violated Title II (Americans With Disabilities Act) 28 CFR 35.134 (retaliation)

38. Defendant Faust violated MGL c274 s4 (accessories after fact)

39. Defendant Iuliano violated MGL c274 s4 (accessories after fact)

40. Defendant Lapp violated MGL c274 s4 (accessories after fact)

41. Defendant Neugenboren violated MGL c272 s98 (discrimination in admission to, or treatment in, place of public accommodation)

42. Defendant Bacow violated MGL c274 s4 (accessories after fact)

43. Defendant Chipman violated Title II (Americans With Disabilities Act) 28 CFR 35.134 (retaliation)

44. Defendant Catalano violated Title II (Americans With Disabilities Act) 28 CFR 35.134 (retaliation)

## RELIEF

I therefore request the following relief:

(a) Judgment against the defendants regarding their violations;
(b) Injunctions against the defendants to not engage in such conduct against other persons in the future;
(c) General damages;
(d) Punitive damages;
(e) Additional judgment and damages against the defendants that the court may find are warranted.

## JURY TRIAL REQUEST

I would like to request a trial by jury on all issues that are triable.

## AFFIRMATION

I swear under the pains and penalties of perjury that this Complaint is true to the best of my knowledge and recollection.


Submitted by, and submitted to the defendant's attorney by,

*[signature: Dan Howitt]*

Dan Howitt
dth055@g.harvard.edu
857-247-0764

Date: 6/24/23

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2381CV01823 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Dan Howitt vs. Harvard University | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: Dan Howitt 26 MT Auburn St. Cambridge, MA 02138 | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

## TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION

### DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/19/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 10/19/2023 | |
| All motions under MRCP 12, 19, and 20 | 10/19/2023 | 11/20/2023 | 12/18/2023 |
| All motions under MRCP 15 | 08/14/2024 | 09/13/2024 | 09/13/2024 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/10/2025 | | |
| All motions under MRCP 56 | 07/10/2025 | 08/11/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/08/2025 |
| Case shall be resolved and judgment shall issue by | | | 06/22/2026 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED 06/21/2023 | ASSISTANT CLERK | PHONE |
|---|---|---|

Date/Time Printed: 06-21-2023 06:54:47   SCV026\ 08/2018