**UNITED STATED DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1:23CV11793MJJ

Dan Howitt,

                Plaintiff,

v

Harvard University,
Harvard University Police Department,
James Lawson,
Daniel Twomey,
Francis Riley,
Kevin Regan,
Charles Chalmers,
James Pignone,
Charles Hanson,
Victor Clay,
John Fulkerson,
Harvard University General Counsel,
Robert Iuliano,
Barbara Fees,
Leanne Giannino,
John O'Connor,
Kate Upatham,
John Doe 1,

                Defendants.

**AMENDED**
**COMPLAINT AND REQUEST FOR BENCH TRIAL**

2 – 3      I.      INTRODUCTION
4 – 4      II.     JURISDICTION AND VENUE
5 – 6      III.    PARTIES
7 – 14     IV.     FACTS
15 – 51    V.      CAUSES OF ACTION
52 – 52    VI.     REQUEST FOR BENCH TRIAL

I.

## INTRODUCTION

1.    The core of my life was subverted, from 3/2015 to the present, by the profuse, willful, federal violations and state violations, and profuse willful severe defamation, of the defendants, namely violations of the following statutes, and of the prohibition of defamation:

CFR 34 s106.71
USC 20 s1681-1688 (via: *Jackson v. Birmingham Board Of Education*, 544 US 167, 173 (2005))

USC 18 s1513(e)

USC 42 s2000a-2
USC 42 s2000a-1

USC 42 s12132
USC 42 s12203
MGL c272 s98 (via: *Currier v. National Board of Medical Examiners*, 462 Mass. 1, 17 (2012), et al.)

2.    I filed a motion for equitable tolling requesting a tolling of the statutes of limitations to at least 3/2015 on the authority of the following decisions:

*Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988)
"For example, if the potential defendant encourages or cajoles the potential plaintiff into inaction, that conduct may be a basis of extending the limitations period as matter of equity. Id. At 817-819."

*Cherella v. Phoenix Techs. Ltd.*, 32 Mass. App. Ct. 920 (1992)
"That limitations period, however, is subject to equitable tolling. *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988). For example, if the potential defendant encourages or cajoles the potential plaintiff into inaction, that conduct may be a basis of extending the limitations period as matter of equity. Id. at 817-819."

3.    Moreover, I was caused, and still endure, immense psychological devastation, which has chronically gravely undermined the quality of my life from 3/2015 to the present, and which since 3/2015 has necessitated substantial medical treatment.

4.    I receive SSI Disability Income, MassHealth Medicaid, Supplemental Nutrition Assistance Program, and a HUD Section 8 Voucher.

5.    I am diagnosed with marked Autism Spectrum Disorder (hereafter Asperger's) (DSM-V, 299.00 (F84.0)), marked Major Depressive Disorder (DSM-V, 296.33 (F33.2)), and marked Post Traumatic Stress Disorder (DSM-5, 309.81(F43.10) caused by chronic disability-based social abuse.

6.    Due to disabilities, prior to college I had a 1.5 gpa; and thereafter I improved on my own accord to receiving a MA in philosophy at Colgate (the leading MA program in philosophy in the US), and thereafter completing PhD level study in philosophy at Chicago with a 3.7 gpa.  I moved to Harvard in 2/2014 from 3,000 miles away in order to try to improve my life.  I had no social problems at Colgate and Chicago, nor before.

7.      I remained living near the university from 3/2015 to present because I was told yearly, by several of the aforementioned violators of federal law and state law, that my circumstance at the university would be reconsidered yearly.

## II.
### JURISDICTION AND VENUE

1.      Via USC 28 s1331, this court has jurisdiction over violations of the following statutes:

CFR 34 s106.71
USC 20 s1681-1688 (via: *Jackson v. Birmingham Board Of Education*, 544 US 167, 173 (2005))

USC 18 s1513(e)

USC 42 s2000a-2
USC 42 s2000a-1

USC 42 s12132
USC 42 s12203
MGL c272 s98 (via: *Currier v. National Board of Medical Examiners*, 462 Mass. 1, 17 (2012), et al.)

2.      Via USC 28 s1331, this court has jurisdiction over defamation that occurs in the context of, and via violations of, the above statutes, and which causes harm to the plaintiff.

3.      Via USC 28 s1343, this court has jurisdiction over civil complaints that request monetary relief regarding violations of the above statues.

4.      Via USC 42 c126 s12188, this court provides for presenting this complaint to, and requesting the assistance of, the Massachusetts Attorney General:

(a)   Request for the Massachusetts Attorney General, per its obligation, to investigate the violations that are presented in this complaint, and to take part in my complaint, or initiate its own complaint against the defendant.
(b)   In order to vindicate the public interest, assess a civil penalty against the defendant of up to $50,000 for the first violation, and up to $100,000 for each subsequent violation.
(c)   Punitive damages

5.      Via USC 42 12181(7)(j), the defendant's educational business is a place of public accommodation.

6.      Via USC 28 s1391(b), the venue is proper:  The violations occurred in the jurisdictional district of this court, namely Massachusetts, which is also where Harvard is located, and which is where I have lived from prior to the violations, to the time of the violations, and at present.

7.      Via the following, this court has jurisdiction over violations of MGL c272 s98:

(a)   *Currier v. National Board. of Medical Examiners*, 462 Mass. 1, 17 (2012).
(b)   *Folly-Notsron v. 180 Broadway Liquor Inc.*, No. 1:22-CV-11983-WGY, 2023 WL 3958453, at 8 (D. Mass. Apr. 27, 2023).
(c)   *Brooks v. Martha's Vineyard Transit Authority*, 433 F. Supp. 3d 65, 70 (D. Mass. 2020).

8.      Via USC 28 s1367(a), this court has supplemental jurisdiction over claims about violations of MGL c266 s37E(c), because those claims arose out of the same case or controversy as my federal claims.

4

### III.
### PARTIES

1.    Plaintiff, Dan Howitt.

2.    Defendant, Harvard University ("university" or "Harvard"), is a private university located in Massachusetts, which receives federal financial assistance, and which as such is required to not violate the following aforementioned statutes:

CFR 34 s106.71
USC 20 s1681-1688
USC 42 s2000a-2
USC 42 s2000a-1
USC 42 s12132
USC 42 s12203

3.    Defendant, Harvard University Police Department ("university-police"), is a department of the university, and committed violations against me; and as such the university is responsible for its conduct.

4.    Defendant, officer James Lawson, was, and may still be, an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

5.    Defendant, officer Daniel Twomey, was an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

6.    Defendant, chief-officer Francis Riley, was an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

7.    Defendant, officer Kevin Regan, was an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

8.    Defendant, officer Charles Chalmers, was, and may still be, an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

9.    Defendant, officer James Pignone, was, and may still be, an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

10.    Defendant, officer Charles Hanson, was an employee of the university-police when he committed violations against me; and as such the university is responsible for his conduct.

11.    Defendant, chief-officer Victor Clay, is an employee of the university-police, and was when he committed violations against me; and as such the university is responsible for his conduct.

12.    Defendant, officer John Fulkerson, is an employee of the university-police, and was when he committed violations against me; and as such the university is responsible for his conduct.

13.     Defendant, Harvard University General Counsel ("general-counsel"), is an department of the university, and was when it committed violations against me; and as such the university is responsible for its conduct.

14.     Defendant, Robert Iuliano, was an employee of the general-counsel, and the general-counsel, when he committed violations against me; and as such the university is responsible for his conduct.

15.     Defendant, Barbara Fees, was an employee of the university when she committed violations against me; and as such the university is responsible for her conduct.

16.     Defendant, Leanne Giannino, was, and may still be, an employee of the university when she committed violations against me; and as such the university is responsible for her conduct.

17.     Defendant, John O'Connor, is an employee of the university, and was when he committed violations against me; and as such the university is responsible for his conduct.

18.     Defendant, Kate Upatham, is an employee of the university, and was when she committed violations against me; and as such the university is responsible for her conduct.

19.     Defendant, John Doe 1, of the university-police, was, and may still be, an employee of the university-police when the person committed violations against me; and as such the university is responsible for the person's conduct

IV.
FACTS

1.      11/2014 – 12/2014.  I was subjected to dozens of instances, over 2.5 weeks, of in-person verbal, in-person physical, and emailed, patent sexual harassment by apparent gay male Mohamad Jarada, a then Divinity School graduate student, in the university's law library, Langdell Library, and via email.

2.      11/2014 – 12/2014.  I was subjected to in-person verbal, and emailed, severe antisemitism by Hadel Jarada, a then Islam studies graduate student, in Langdell Library, and via email.

3.      12/2014.  I professionally conveyed (*1 – 3*) via email to several administrative offices of the university.

4.      1/2015 – 2/2015.  Hadel engaged in retaliation via fraudulent claims to the library administration, and then to the university-police, including stating that I contacted her Islam studies department asking for her home address, and that she worried that I would follow her home from Whole Foods Somerville.

5.      2/2015.  Defendant officer James Lawson initiated a no-trespass against me in response to Hadel's statements to him, and in response to my conveying (*1 – 2*) to him when he telephoned me about Hadel's claims.

6.      Via simple Internet research, I found that Mohamad and Hadel, who are siblings, have a multitude of immediately family in Fairfield, CA who are publicly reported as having been sued for fraud in California Superior Court by the Nordstrom Department Store, and by the State Of California for vehicle exhaust certification fraud, regarding their Smog King franchises, resulting in losses of their business licenses.  One of their business partners is reported by a newspaper as being jailed due to his fraud.  Via email in 2014, Hadel conveyed to me that she is from Fairfield, CA; and there are public Internet listings for her and Mohamad as residing with the aforementioned immediate relatives.

6a.      Via simple Internet research, and my own research, I found that the university-police (the below discussed Twomey, Riley, and Regan) were reported by media as having engaged in substantial misconduct:

(a)  Twomey engaged the crime of writing a false police-report, and arrest under false pretense, both of which are demonstrated by the below FBI director's speech where the incident occurred.

http://www.thecrimson.com/article/2007/5/1/arrest-report-disputed-the-police-report/
http://www.thecrimson.com/article/2007/5/2/harvard-calls-for-dropped-charges-harvard/
http://www.thecrimson.com/article/2007/5/2/university-statement-on-iop-arrests-span/
https://iop.harvard.edu/events/balance-national-security-and-civil-liberties

(b)  Regan and Riley engaged in unauthorized use of university vehicles, and theft of university money via credit cards intended to purchase gasoline:

http://www.thecrimson.com/article/2009/3/27/hupd-investigated-for-alleged-misuse-of/
http://www.masscops.com/threads/harvard-investigates-police-use-of-cars-gas.73101/

The following are more recent articles about other matters that are relevant to the

(c)  "Harvard University Police Leads Massachusetts College Campus Police Forces In Sustained Complaints, Ranks Fifth Statewide In Database"

https://www.thecrimson.com/article/2023/8/29/hupd-post-complaints/

https://www.instagram.com/theharvardcrimson/p/CwiTI5_Ji6U/

"The data show the Harvard University Police Department with the most complaints of any Massachusetts campus"

https://www.bostonglobe.com/2023/08/25/metro/college-campus-police-complaints/

(d)  Riley was forced into retirement after an investigation:

https://www.forbes.com/sites/susanadams/2020/06/08/embattled-harvard-police-chief-announces-he-will-retire/

https://www.thecrimson.com/article/2020/1/31/hupd-investigation/

https://www.thecrimson.com/article/2020/6/9/hupd-riley-steps-down/

(e)  "Harvard 'failed its Jewish students' and must face antisemitism lawsuit, judge rules"

https://abcnews.go.com/US/harvard-failed-jewish-students-face-antisemitism-lawsuit-judge/story?id=112642274

"Harvard president resigns amid controversy over antisemitism testimony"

https://www.pbs.org/newshour/show/harvard-president-resigns-amid-controversy-over-antisemitism-testimony-plagiarism-claims

7.      2/2015.  I conveyed via email and voicemail (*1 – 6*) to the university general-counsel, defendant Robert Iuliano, and requested that he intervene, and arrange for my no-trespass to be rescinded.

7a.      I moreover conveyed that Ombudsperson Lydia Cummings stated to me that he oversees the university-police and that he is the person to contact about my complaint.

8.      He declined via email, and stated that only the police-chief can rescind a no-trespass.

8a.      However, the university's general counsel is who appoints the police-chief, and who has oversight over, and authority over, the university-police.

9.      3/2015.  Defendant officer Daniel Twomey via email and in-person supported, and further initiated, Lawson's issuance of a no-trespass against me.

10.      3/2015.  Defendant chief Francis Riley via my meeting with him and Twomey supported, and further initiated, Lawson's issuance of a no-trespass against me, stated that it did not include campus-grounds, and stated that it is not criminal in nature, nor civil, but rather "private".

11.      My no-trespass was reviewed in yearly intervals via the police department's protocol, namely yearly "NTO Review" (No Trespass Order Review), as Riley, Twomey, defendant officer Kevin Regan, and defendant officer Charles Hanson also informed me of.  Moreover, Twomey, Hanson, and Regan intermittently emailed me to contact them at later times in the future for review of my no-trespass, which were of the 1 year intervals.

12.     2/2015.  Lawson did not convey to me that he issued a no-trespass, resulting in my being verbally assailed and physically menaced by officer Steve Fumicello in Widener Library for 30 minutes: Upon entry in the library, my ID card would not work, after which I went to the access office 10 yards away to inquire why, at which time the library director called the university-police.

12a.    Fumicello, while I was sitting on the edge of a desk while still, and after I had been having a polite conversation with officer Charles Merrin, repeatedly charged me within inches of my body and face, repeatedly thwarted his hands and arms toward my face, and repeatedly assailed me with personal criticisms with an vicious scowl, "You're *not* a professor!", while looking up and down my body at my clothing, "You should realize it is a *privilege* for you to be here!", "We might decided that we don't want you around here any more!", etc.

13.     2/2015 onward.  Lawson conveyed to a multitude of university-departments that I engaged in criminal conduct, and that I did so because I have Asperger's.

14.     2/2015 onward.  Twomey did the same.

15.     3/2015, Lawson and Twomey conveyed to ombudsperson Lydia Cummings that because I have Asperger's I engaged in criminal harassment and criminal stalking against Hadel and Mohamad, that Lawson may seek a criminal complaint against me due to this, that my Asperger's entails that I am unaware of my criminal behavior, nor that Islam does not permit homosexuality, that I am a criminal danger to the university, and a potential school shooter.

16.     3/2015.  Philosophy professor Selim Berker emailed me that I could no longer attend philosophy courses because he was told that I am a criminal danger to campus, and that even if my no-trespass is rescinded, I still would not be permitted to attend courses.

17.     3/2015.  Philosophy professor Thomas Scanlon emailed me the same.

18.     3/2015.  Philosophy professor Sean Kelly emailed me that he could not process my admission's application because of the no-trespass, and could not do so even if it was rescinded.

19.     3/2015.  Twomey and Riley stated that my no-trespass would be reevaluated that fall.

20.     Twomey emailed me prior to the fall that it was not to be rescinded.

21.     9/2015.  I emailed Lawson that I was going to file a Massachusetts Commission Against Discrimination (MCAD) complaint against him.

22.     2016.  Twomey provided me with permission to use the business school to study if I needed.

23.     2016.  Lawson sustained my no-trespass for another 1 year upon learning of my work in the Munchausen By Proxy field, namely that I extricated via the Winston Salem, NC police a college student in another state who had been subjected to 10+ years of Munchausen By Proxy by her mother.

24.     11/2016.  Defendant dean Neugeboren emailed me that Regan conveyed to him that I committed crime on campus and was a threat to campus.

25.     Neugeboren expelled me.

26.     After weeks of discussion with him, he reinstated me.

27.     Early 2017.  Regan sustained my no-trespass for another 1 year upon learning of my lawsuit regarding the multitude of health-code violations and other civil violations of my landlord, Amy Thompson, who at that time was a media-services employee at the university.

28.     Late 2017.  Regan sustained my no-trespass for another 1 year, and escalated it to include campus-grounds, upon being informed by defendant operations-director John O'Connor (per university-police record 2017-0002920A) that employee Barbara Fees reported being uncomfortable with me regarding my 4-5 minute polite conversation with her at the business school, and regarding my asking one of her catering staff, 1+ weeks later, if there were any open positions for a female acquaintance of mine who worked at the campus gym.

28a.     Fees conveyed her opinion to a security member who was walking by one day, who then conveyed it to the supervisor that day, who then conveyed this to O'Connor, who then conveyed it to the below officer Chalmers.

28b.     As is stated in the above police-record, Fees did not contact the university-police, nor was contacted by the university-police for her statement, and instead O'Connor is who contacted the university-police, and who is listed as the reporting person.

28c.     As is demonstrated in the aforementioned police-record, Fees was asked by O'Connor to provide a statement to the below officer Chalmers, and that she said that she would, but that she was busy and had to return to her work thereafter.

28d.     As such, O'Connor is who orchestrated this action against me, by furthering what surely would have been a benign report of hers to a simple roving security guard, including by asking her to provide a statement to the university-police.

28e.     There were many other ways of handling Fee's report to the security member, such as by speaking with me, viewing the abundant video, and advising Fee's that I did nothing inappropriate.

29f.     O'Connor's orchestration of that action against me was motivated by his disability-discriminatory animus toward me:  Upon information and belief, he knew that I have Asperger's, and he conceived of me as a socially harmful person because it, despite that social harm is not an aspect of the diagnostic criterial of Asperger's.

28g.     I would walk through the business school often, and would see various security staff often during their walking tours.  Many would say hello to me each time; and in my loneliness, but like many others on campus, I would talk to them at times; and many of them asked me if I wanted to walk with them during their walking tours; and I would often see them walking with faculty, students, staff, etc.  I

became friends on and off-campus with Nicole Kirby, and developed acquaintanceships with many others - Emir Velagoshti, Andy Garczynski, Kumar Dangi, Ken Perro, Jay, etc.

29.    Late 2017.  Defendant officer Charles Chalmers filed the statement-of-facts (the above university-police record 2017-0002920A) of the criminal complaint (1708CR001045; Brighton District Court) against me for trespassing regarding the above Fees.

29a.    He ignored (*22*) by stating that I had "trespassed"; and in the content of his complaint (per university-police record 2017-0002920A) he stated that I "harassed" Fees, and that my Asperger's is the reason for my "problems on campus.

29b.    O'Connor conveyed to Chalmers the conspiracy fantasy that I befriended security staff of all shifts (1st, 2nd, and 3rd shifts) for the purpose of, with ill intent, asking them about the intricacy of their jobs.

29c.    The judge dismissed his complaint by stating that I did nothing civilly violative nor criminal violative, and that I should be permitted to resume campus use for my work and social life.

29d.    The university-police used a patently inaccurate postal-mailing address for me for their court case against me, resulting in my not receiving it.

29e.    The court notified them that my summons was returned to them as undelivered.

29f.    Despite that the university-police had my email address and telephone number since 3/2015, they did not inform me of this, nor provide the court with my email address nor telephone number.

29g.    Over 1 month later, when I emailed Regan about the status of my no-trespass (in the context of my lawsuit (*27*) against my landlord), he told me to "surrender" myself to the court because a "default-warrant" was issued against me.

30.    Regan emailed me rejecting the Brighton District Court judge's statements, including that I should be permitted to resume campus use.

31.    2018.  Mohamad left campus in 2016, and I filed a professionally written Title IX complaint against him.

32.    Regan, upon learning of this, responded by sustaining my no-trespass for another 1 year.

33.    Late 2019.  Officer Charles Hanson sustained my no-trespass for another 1 year upon learning of my MCAD complaint against a bookstore, and the content of my complaint, namely that 4 of 20+ employees at a bookstore were persistently abusing me with severe anti-male sexist, disablist, ageist, and appearance-discriminatory statements, and physical misconduct, and after learning that the owner of the bookstore, upon seeing me standing on a nearby sidewalk among hundreds of passers-by, contacted the university-police about me with fraudulent allegations.

34.    Early 2019.  Lawson sustained my no-trespass for another 1 year upon learning that a complaint against Hadel was made at her Finland university and at Harvard demonstrating that since 2016 she had

been committing academic fraud by claiming at the Finland university to have a PhD in Islam studies from Harvard.

35.    Lawson emailed me that I engaged in criminal harassment and criminal stalking of Hadel, and that he may seek a criminal complaint against me, because she in fact had a PhD from Harvard, and that I was engaging in such conduct due to being mentally ill.  In 2018, and after the above, I sent him the simple Harvard webpages showing that she did not have a PhD; and webpages show that she received a PhD in May 2021.

36.    Late 2018.  I found, from what google-legal sent to me at my request, that Lawson, and/or John Doe 1, impersonated the Middlesex District Attorney's Office (MDAO), and the Middlesex District Attorney, Marion Ryan, via using a real Administrative Subpoena of that office, and modifying it into a form-subpoena, which they modified as they desired, and which they themselves, rather than the MDAO, as is required, sent to google-legal in order to obtain the user-data for the email address that the Finland university and Harvard were contacted with about Hadel's academic fraud.

36a.    Moreover, google-legal stated to me that they received the subpoena from the MDAO, demonstrating that Lawson and/or John Doe 1 succeeded in their deceptive goal, namely to deceive google-legal that the subpoena was sent directly by the MDAO.

36b.    The subpoena consists of a stamp-signature of Ryan (Ryan is not involved in Administrative Subpoenas), and lacks the required two signatures, and two printed names, of two actual people of the district attorney's office that are required to write and approve of subpoenas.

36c.    Moreover, the subpoena has the typed-name "Assistant District Attorney" and no signature nor typed-name for this purported person.

36d.    Moreover, the subpoena consists of removed text, and added text in its place, where Lawson and/or John Doe 1 make statements to, and demands of, google-legal.

36e.    Lawson and/or John Doe 1 engaged in the above violations in order for Lawson to proceed with his aforementioned retaliatory harassment of me regarding my professional conveyance of Hadel's proven academic fraud to the relevant departments of the Finland university and Harvard.

36f.    At that time, I notified via telephone and email the MDAO Administrative Subpoena office, and assistant district attorney Graham Van Epps, of this matter.

37.    Late 2020.  Hanson sustained my no-trespass for another 1 year citing the pandemic as the reason, despite that university-affiliates were being permitted to use all campus grounds and, for specific purposes, buildings; and I could have done both, especially to meet with my professors.  None of the other affiliates that I knew were constrained from using campus.

38.    10/2021.  Chief Victor Clay rescinded my no-trespass after speaking with one of my private-study professors, Theo Theoharis.

39.    2022 and 2023.  Securitas staff defendant Blondie Cassell repeatedly verbally assailed on campus with an array of hostile statements that I had a no-trespass, was not supposed to be on campus, demanded that I leave, conveyed allegations about me, etc., much of which I have on video.

40.    4/2023.  I emailed a professionally written complaint to dean Srikant Datar, and Clay, against a guest-services employee, Lianne Giannino, for stating severely disablist comments to me after I mentioned to her that I was having substantial difficulty with my Asperger's symptoms:  She mockingly, and with a scowl, while staring at me intensely, said, "It's because you're crazy!  You're crazy!"  And she continued to stare at me in that manner.  I politely asked her if she meant that I have psychosis or Schizophrenia.  I then politely segued into wishing her a good night and said goodbye.  I did not speak with her again thereafter nor planned to.

40a.    The dean's assistant, Jean Cunningham, replied to me that O'Connor would like to speak with me, which I declined on the basis of his abuse of me regarding Fees.

40b.    From information and belief, O'Connor, as he did regarding Fees, immediately contacted the university-police with a complaint against me, which resulted in a no-trespass being issued against me.

41.    4/2023.  My no-trespass was reinstated without anyone conveying this to me.

42.    5/2023.  I was verbally assailed and physically encroached upon on campus by 3 officers (Pignone, Healy, and another) in the presence of hundreds of people while I was watching a graduation ceremony on campus.

42a.    Pignone stated twice to me over 10 minutes, "You should not be surprised if you receive a summons for a criminal complaint against you in the mail", even after I twice told him that I was never informed that I had another no-trespass.

43.    5/2023.  I spoke with Clay via telephone on that day (in 2021 he emailed me his cell-phone number, 617-680-1273), and he indicated that he would rescind the no-trespass after speaking with various people, and said that he would call me back.

44.    He asked me to text-message him my documents about Lawson.

45.    A day later I filed a complaint against the university in Middlesex Superior Court, which was later removed by the defendant's attorneys to this court.

46.    A few days later Clay told me via telephone that the general-counsel told him to not speak with me.

47.    I told him that I would dismiss my complaint if he would rescind my no-trespass, and he said "That is coercion".  However, that actually was an attempt at civil mediation.

47a.    I sent a professionally written complaint about Leanne Giannino to the University Disability Resources office, and defendant director Kata Upatham stated that Giannino's  conduct is not of disability-discrimination.

47b.    Giannino's conduct is patently of disability-discrimination.

48.     I emailed the general-counsel several times from 5/2023 to 8/2023, and later via their attorney-representative, requesting that my no-trespass be rescinded on the basis that it was issued via violations of federal law and state law.  It was not, and has remained to the present.

49.     6/2023.  Defendant officer John Fulkerson sent me a postal-letter about my above telephone interactions with Clay, and stated that if I continue to engage in telephone conduct "for the purpose of harassment and annoyance" "it is a crime punishable by fine and imprisonment" and "will subject you to arrest and prosecution".

50.     My private-study professor of several years from 2014 onward, law professor Lloyd Weinreb, eventually withdrew from me after Riley and Hanson, as he stated to me via email, conveyed the aforementioned defamation to him via telephone.

51.     My private-study professor of several years from 2015 onward, English literature professor Theo Theoharis, eventually withdrew from me after Regan conveyed the aforementioned defamation to him

52.     Dozens of people who I had established meaningful rapports with from 2/2014 onward, abruptly from 3/2015 onward, discontinued engaging with me in any way, which was psychologically devastating.

**V.**
**CAUSES OF ACTION**

### COUNTS 1 – 9

53.     I restate and reincorporate by reference 1 – 52.

Lawson violated CFR 34 s106.71 by retaliating against my administrative complaints, and complaint to him, of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688). Lawson issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Lawson 9 times violated CFR 34 s106.71.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages and damages that the court may find are warranted.

### COUNTS 10 – 19

54.     I restate and reincorporate by reference 1 – 53.

Per (*53*), Lawson, in violating CFR 34 s106.71 by retaliating against my complaints of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688) by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present, also 9 times violated USC 20 s1681-1688, per the following:

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Lawson 9 times violated USC 20 s1681-1688.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages and damages that the court may find are warranted.

### COUNTS 20 – 29

55.     I restate and reincorporate by reference 1 – 54.

Twomey violated CFR 34 s106.71 by retaliating against my administrative complaints, and complaint to him, of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688). Twomey issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Twomey 9 times violated CFR 34 s106.71.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  Additional orders and damages that the court may find are warranted.

### COUNTS 30 – 39

56.     I restate and reincorporate by reference 1 – 55.

Per (55), Twomey, in violating CFR 34 s106.71 by retaliating against my complaints of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688) by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present, also 9 times violated USC 20 s1681-1688, per the following:

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Twomey 9 times violated USC 20 s1681-1688.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  Additional orders and damages that the court may find are warranted.

### COUNTS 40 – 49

57.    I restate and reincorporate by reference 1 – 56.

Riley violated CFR 34 s106.71 by retaliating against my administrative complaints, and complaint to him, of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688). Riley issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Riley 9 times violated CFR 34 s106.71.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 50 – 59**

58.    I restate and reincorporate by reference 1 – 57.

Per (*57*), Riley, in violating CFR 34 s106.71 by retaliating against my complaints of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688) by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present, also 9 times violated USC 20 s1681-1688, per the following:

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Riley 9 times violated USC 20 s1681-1688.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 60 – 69**

59.    I restate and reincorporate by reference 1 – 58.

Lawson's motivation for violating CFR 34 s106.71 (per *53*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Mohamad Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Lawson 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages.

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.


**COUNT 70 –  79**

60.    I restate and reincorporate by reference 1 – 59.

Twomey's motivation for violating CFR 34 s106.71 (per *55*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Mohamad Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Twomey 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c. General damages.

d. Punitive damages

e. Additional orders and damages that the court may find are warranted.

**COUNT 80 – 89**

61.    I restate and reincorporate by reference 1 – 60.

Riley's motivation for violating CFR 34 s106.71 (per *57*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Mohamad Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Riley 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. Criminal charges.

c. General damages.

d. Punitive damages

e. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f. Additional orders and damages that the court may find are warranted.

**COUNTS 90 – 99**

62.    I restate and reincorporate by reference 1 – 61.

Lawson violated USC 42 s2000a-2 by retaliating against my administrative complaints, and complaint to him, of religious discrimination against Hadel Jarada (who violated USC 42 s2000a via severe antisemitism in-person and via email a multitude of times).  Lawson issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023-present.  As such, Lawson 9 times violated USC 42 s2000a-2.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.

**COUNTS 100 – 109**

63.     I restate and reincorporate by reference 1 – 62.

Twomey violated USC 42 s2000a-2 by retaliating against my administrative complaints, and complaint to him, of religious discrimination against Hadel Jarada (who violated USC 42 s2000a via severe antisemitism in-person and via email a multitude of times). Twomey issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023-present. As such, Twomey 9 times violated USC 42 s2000a-2.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. Additional orders and damages that the court may find are warranted.

**COUNTS 110 – 119**

64.     I restate and reincorporate by reference 1 – 63.

Riley violated USC 42 s2000a-2 by retaliating against my administrative complaints, and complaint to him, of religious discrimination against Hadel Jarada (who violated USC 42 s2000a via severe antisemitism in-person and via email a multitude of times). Riley issued a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023-present. As such, Riley 9 times violated USC 42 s2000a-2.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.

**COUNTS 120 – 129**

65.     I restate and reincorporate by reference 1 – 64.

Lawson's motivation for violating USC 42 s2000a-2 (per *62*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Hadel Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Lawson 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 130 – 139**

66.     I restate and reincorporate by reference 1 – 65.

Twomey's motivation for violating USC 42 s2000a-2 (per *63*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Hadel Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Twomey 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 140 – 149**

67.    I restate and reincorporate by reference 1 – 66.

Riley's motivation for violating USC 42 s2000a-2 (per *64*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Hadel Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 9 times, by issuing a no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Riley 9 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 150 – 159**

68.    I restate and reincorporate by reference 1 – 67.

Lawson violated USC 42 s2000a-2 again, because the violations of USC 42 s2000a by Hadel are prohibited by the state laws MGL c76 s5 and CMR 603 26.00.  Therefore, Lawson violated USC 42 s2000a-2 an additional 9 times.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 160 – 169**

69.    I restate and reincorporate by reference 1 – 68.

Twomey violated USC 42 s2000a-2 again, because the violations of USC 42 s2000a by Hadel are prohibited by the state laws MGL c76 s5 and CMR 603 26.00.  Therefore, Twomey violated USC 42 s2000a-2 an additional 9 times.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 170 – 179**

70.    I restate and reincorporate by reference 1 – 69.

Riley violated USC 42 s2000a-2 again, because the violations of USC 42 s2000a by Hadel are prohibited by the state laws MGL c76 s5 and CMR 603 26.00.  Therefore, Riley violated USC 42 s2000a-2 an additional 9 times.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 180 – 215**

71.    I restate and reincorporate by reference 1 – 70.

Iuliano was the only administration member who had authority over the university-police:  Per university policy, only the university's general-counsel has such oversight over, and authority over, the university-police.  From 3/2015 onward, per my communications with him, and per Riley's

communications with him (as Riley expressed to me in my 3/2015 meeting with Riley), he was fully aware of my circumstance, and elected to not intervene in any way.  His failure to intervene into the aforementioned violations of Lawson, Twomey, and Riley should be considered instances of each violation.  Therefore, from 3/2015 to present, due to the yearly renewals of my no-trespass, Iuliano 9 times violated each of USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, and USC 20 s1681-1688.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. Criminal charges.

c. General damages.

d. Punitive damages

e. An injunction prohibiting the defendant from practicing law in Massachusetts.

f. Additional orders and damages that the court may find are warranted.

### COUNTS 215 – 222

72.    I restate and reincorporate by reference 1 – 71.

Regan violated CFR 34 s106.71 by retaliating against my complaint of sexual harassment against Mohamad (who violated USC 20 s1681-1688).  Regan sustained, and re-initiated, the no-trespass against me from 4/2016 onward (prior to Twomey's death in 2016), which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Regan 8 times violated CFR 34 s106.71.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.

### COUNTS 223 – 230

73.    I restate and reincorporate by reference 1 – 72.

Per (*72*), Regan, in violating CFR 34 s106.71 by retaliating against my complaints of sexual harassment against Mohamad Jarada (who violated USC 20 s1681-1688) by, from 4/2016 onward, sustaining, and re-initiating, the no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present, also 8 times violated USC 20 s1681-1688, per the following:

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

As such, Regan 8 times violated USC 20 s1681-1688.

Due to the aforementioned, I request the following relief:

a.   Judgment on the violations.

b.   General damages.

c.   Punitive damages

d.   An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.   Additional orders and damages that the court may find are warranted.

### COUNTS 231 – 238

74.     I restate and reincorporate by reference 1 – 73.

Regan's motivation for violating CFR 34 s106.71 (per *72*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Mohamad Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 8 times, by sustaining, and re-initiating, the no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Regan 8 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.   Judgment on the violations.

b.   Criminal charges.

c.   General damages.

d.   Punitive damages

e.   An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.   Additional orders and damages that the court may find are warranted.

**COUNTS 231 – 238**

75.    I restate and reincorporate by reference 1 – 74.

Regan's motivation for violating USC 20 s1681-1688 (per *73*) in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Mohamad Jarada, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 8 times, by, from 4/2016 onward, sustaining, and re-initiating, the no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

As such, Regan 8 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 239 – 246**

76.    I restate and reincorporate by reference 1 – 75.

Regan violated USC 42 s2000a-2 by retaliating against my administrative complaints, and complaint to him, of religious discrimination against Hadel Jarada (who violated USC 42 s2000a via severe antisemitism in-person and via email a multitude of times).  From 4/2016 onward, Regan sustained and re-initiated the no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.  As such, Regan 8 times violated USC 42 s2000a-2.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 247 – 254**

77.    I restate and reincorporate by reference 1 – 76.

Regarding (*76*), Regan's motivation for violating USC 42 s2000a-2 in the way that he is in violation of USC 18 s1513(e):  I conveyed to him the multitude of violations of federal law by Hadel, and he then embarked on violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, and 8 times.  From 4/2016 onward, Regan sustained and re-initiated the no-trespass against me, which persisted in yearly renewals, to 10/2021, and again from 4/2023 – present.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."
As such, Regan 8 times violated USC 18 s1513(e).

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 255 – 262**

78.    I restate and reincorporate by reference 1 – 77.

Regarding (*76*), Regan additionally violated USC 42 s2000a-2, because the violations of USC 42 s2000a by Hadel are prohibited by the state laws MGL c76 s5 and CMR 603 26.00.  Therefore, Regan violated USC 42 s2000a-2 from 4/2016 – present an additional 8 times.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 263**

79.    I restate and reincorporate by reference 1 – 78.

Violation of USC 42 s12132 by Lawson.  Beginning in 3/2015, Lawson communicated to a multitude of people and departments of the university with whom I was involved (Lydia Cummings, philosophy professors Selim Berker, Sean Kelly, and Thomas Scanlon, the philosophy department administration, the administration of Widener Library and Langdell Library, and likely many others) that because I have Asperger's Syndrome (ASD) and am "obsessive", I engaged in "criminal harassment", "criminal stalking", and "criminal conduct" against Hadel and Mohamad via my sexual harassment complaints against Mohamad, religious discrimination complaints against Hadel, and academic fraud complaints against Hadel, though he never provided to them his reasons for how such complaints constitute criminal conduct.  There was no criminal conduct.  Conflating ASD with criminal conduct, regardless of whether there was criminal conduct, is in violation of USC 42 s12132, because criminal conduct is not a facet of the diagnostic criteria of ASD (per DSM-V, 299.00 (F84.0)), nor any other mental disorder except Anti Social Personality Disorder.  This is fact.  And as a co-editor since 2021 of the leading Journal Of Autism & Developmental Disorders, I additionally state that it is fact.

Due to the aforementioned, I request the following relief:

a.    Judgment on the violations.

b.    General damages.

c.    Punitive damages

d.    An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.    Additional orders and damages that the court may find are warranted.

**COUNT 264**

80.    I restate and reincorporate by reference 1 – 79.

The disability discrimination that I describe in (*79*) entailed that Lawson engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

All of the people and departments who he conveyed his disability discrimination to, due to his false statements, disability discrimination, and presenting me "in a false light", ensuingly engaged in conduct toward me that demonstrated that I sustained "damage to reputation", "dishonor", "criticism", and "condemnation":  The various people and departments further excluded me, including even if my

28

no-trespass was to be rescinded, and severely ostracized me via vicious non-verbal conduct and avoidance.   Moreover, this defamation proliferated to all of the graduate students in the philosophy department; and the array of those who I had friendly rapports then treated me with severe ostracization: They would no longer interact with me in any way, including even saying hello in-passing; and many would look at me with revulsion, severe scowles, etc.  Moreover, I was caused substantial chronic "emotional distress" by the defamation due to being treated in the aforementioned ways by a multitude of people from 3/2015 – present:  The ignominy was, and continues to be, horrid, to the extent that I am persistently fearful of seeing the subjects of the defamation when I travel to areas around campus, and to places that I often see them; and when I do see them, I encounter grievous ignominy, which persists long after.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 265**

81.     I restate and reincorporate by reference 1 – 80.

(*79*) demonstrates that Lawson also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

82.     I restate and reincorporate by reference 1 – 81.

Violation of USC 42 s12132 by Twomey.  Beginning in 3/2015, Twomey communicated to a multitude of people and departments of the university with whom I was involved (Lydia Cummings, philosophy professors Selim Berker, Sean Kelly, and Thomas Scanlon, the philosophy department administration, the administration of Widener Library and Langdell Library, and likely many others) that because I have Asperger's Syndrome (ASD) and am "obsessive", I engaged in "criminal harassment",

"criminal stalking", and "criminal conduct" against Hadel and Mohamad via my sexual harassment complaints against Mohamad, religious discrimination complaints against Hadel, and academic fraud complaints against Hadel, though he never provided to them his reasons for how such complaints constitute criminal conduct.  There was no criminal conduct.  Conflating ASD with criminal conduct, regardless of whether there was criminal conduct, is in violation of USC 42 s12132, because criminal conduct is not a facet of the diagnostic criteria of ASD (per DSM-V, 299.00 (F84.0)), nor any other mental disorder except Anti Social Personality Disorder.  This is fact.  And as a co-editor since 2021 of the leading Journal Of Autism & Developmental Disorders, I additionally state that it is fact.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  Additional orders and damages that the court may find are warranted.

### COUNT 266

83.    I restate and reincorporate by reference 1 – 82.

The disability discrimination that I describe in (*82*) entailed that Twomey engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

All of the people and departments who he conveyed his disability discrimination to, due to his false statements, disability discrimination, and presenting me "in a false light", ensuingly engaged in conduct toward me that demonstrated that I sustained "damage to reputation", "dishonor", "criticism", and "condemnation":  The various people and departments further excluded me, including even if my no-trespass was to be rescinded, and severely ostracized me via vicious non-verbal conduct and avoidance.  Moreover, this defamation proliferated to all of the graduate students in the philosophy department; and the array of those who I had friendly rapports then treated me with severe ostracization: They would no longer interact with me in any way, including even saying hello in-passing.  Moreover, I was caused substantial chronic "emotional distress" by the defamation due to being treated in the aforementioned ways by a multitude of people from 3/2015 – present:  The ignominy was, and continues to be, horrid, to the extent that I am persistently fearful of seeing the subjects of the defamation when I

travel to areas around campus, and to places that I often see them; and when I do see them, I encounter grievous ignominy, which persists long after.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  Additional orders and damages that the court may find are warranted.

**COUNT 267**

84.    I restate and reincorporate by reference 1 – 83.

(*79*) demonstrates that Twomey also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  Additional orders and damages that the court may find are warranted.

**COUNT 268**

85.    I restate and reincorporate by reference 1 – 84.

Violation of USC 42 s12132 by Regan.  Beginning in 4/2016, Regan communicated to a multitude of people and departments of the university with whom I was involved (Neugeboren, Theoharis, and likely many others) that because I have Asperger's Syndrome (ASD), I engaged in "criminal conduct" against people at the university, though he never claimed what I did.  There was no criminal conduct.  Conflating ASD with criminal conduct, regardless of whether there was criminal conduct, is in violation of USC 42 s12132, because criminal conduct is not a facet of the diagnostic criteria of ASD (per DSM-V, 299.00 (F84.0)), nor any other mental disorder except Anti Social Personality Disorder.  This is fact.  And as a co-editor since 2021 of the leading Journal Of Autism & Developmental Disorders, I additionally state that it is fact.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 269

86.  I restate and reincorporate by reference 1 – 85.

The disability discrimination that I describe in (*85*) entailed that Regan engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

All of the people and departments who he conveyed his disability discrimination to, due to his false statements, disability discrimination, and presenting me "in a false light", ensuingly engaged in conduct toward me that demonstrated that I sustained "damage to reputation", "dishonor", "criticism", and "condemnation":  The various people and departments further excluded me, including even if my no-trespass was to be rescinded, severely ostracized me via vicious non-verbal conduct and avoidance. Moreover, this defamation proliferated to all of the graduate students in the philosophy department; and the array of those who I had friendly rapports then treated me with severe ostracization:  They would no longer interact with me in any way, including even saying hello in-passing.  Moreover, I was caused substantial chronic "emotional distress" by the defamation due to being treated in the aforementioned ways by a multitude of people from 3/2015 – present:  The ignominy was, and continues to be, horrid, to the extent that I am persistently fearful of seeing the subjects of the defamation when I travel to areas around campus, and to places that I often see them; and when I do see them, I encounter grievous ignominy, which persists long after.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 270

87.  I restate and reincorporate by reference 1 – 86.

(*79*) demonstrates that Regan also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 271

88.  I restate and reincorporate by reference 1 – 87.

Violation of USC 42 s12132 by Hanson.  In 2019, Weinreb spoke with Hanson at my request for the purpose of requesting that my no-trespass be rescinded.  Weinreb demonstrated to me via email that Hanson engaged in florid disability-discrimination against me by conflating ASD with civil misconduct and criminal misconduct.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 272

89.  I restate and reincorporate by reference 1 – 88.

(*88*) demonstrates that Hanson also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 273

90.  I restate and reincorporate by reference 1 – 89.

The disability discrimination that I describe in (*88*) entailed that Hanson engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

Weinreb shortly thereafter by email in 2019 withdrew from being involved with me, after my having worked with him since 2014.  He politely stated that the complexity of my circumstance at the university places him in difficult liability circumstance.  Moreover, when I would see him in Cambridge, he would be visibly uncomfortable with me, and reduce the time of my usual interactions with him by 99%.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.


### COUNT 274

91.    I restate and reincorporate by reference 1 – 90.

Violation of USC 42 s12132 by Riley.  In 2019, Weinreb, in the same week that he spoke with the above Hanson, also spoke with Riley at my request for the purpose of requesting that my no-trespass be rescinded.  Weinreb demonstrated to me via email that Riley engaged in florid disability-discrimination against me by conflating ASD with civil misconduct and criminal misconduct.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.


### COUNT 275

92.    I restate and reincorporate by reference 1 – 91.

(*91*) demonstrates that Riley also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.


### COUNT 276

93.    I restate and reincorporate by reference 1 – 92.

The disability discrimination that I describe in (*91*) entailed that Riley engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

Weinreb shortly thereafter (including after his concurrent aforementioned conversation with Hanson), by email in 2019 withdrew from being involved with me, after my having worked with him since 2014.  He politely stated that the complexity of my circumstance at the university places him in difficult liability circumstance.  Moreover, when I would see him in Cambridge, he would be visibly uncomfortable with me, and reduce the time of my usual interactions with him by 99%.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.


### COUNT 277

94.    I restate and reincorporate by reference 1 – 93.

Violation of USC 42 s12132 by Regan.  In 2018 and in 2020, Theoharis, at my request, met with Regan to request that my no-trespass be rescinded, and conveyed to me that Regan engaged in substantial disability-discrimination against me by conflating ASD with civil misconduct and criminal misconduct, including stating that the aforementioned Fees is "scared" of me, and that my absence from the university is a "benefit to the Harvard University Community".  Theoharis conveyed to me that

Regan never provided any examples of civil nor criminal misconduct, and that when asked to do so, he remained silent, including when asked why Fees is scared of me.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 278**

95.     I restate and reincorporate by reference 1 – 94.

(*94*) demonstrates that Regan also violated MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 279**

96.     I restate and reincorporate by reference 1 – 95.

The disability discrimination that I describe in (*94*) entailed that Regan engaged in defamation, as defined by USC 28 s4101:

"The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

Theoharis shortly thereafter, via ignoring my typical requests to meet with him, withdrew from being involved with me, after my having worked with him since 2014.  He however did speak with Clay in 10/2021, which resulted in my no-trespass being rescinded.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 280**

97.    I restate and reincorporate by reference 1 – 96.

Lawson's 3/2015 communications with Cummings, with which he, via her conveyance to me of what he stated to her, threatened me into inaction regarding presenting my circumstance to a court, is in violation of USC 18 s1513(e).  In my motion for equitable tolling, I provide via exhibit what Cummings conveyed to me.  Lawson clearly intended to constrain me from advocating for myself in a court because he desired to severely interfere with, and severely damage, the core of my life.  His aforementioned violations of USC 18 s1513(e) (*59* and *65*) were not enough for him:  He desired to constrain me, via a threat, from trying to defeat his interference with and damage of the core of my life.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 281 – 286**

98.    I restate and reincorporate by reference 1 – 97.

Lawson in 2016 sustained my no-trespass for another 1 year upon learning of my work in the Munchausen By Proxy field, and ignored that my work extricated a sophomore college student in North Carolina from the severe 10+ year harm of her mother, including ignoring the support of my work that was emailed to him by the world's leading expert in that field, Dr. Marc Feldman, who presents another case of mine in his 2018 book *Dying To Be Ill* (page 90 – 92).  This was his pretext to continue to harm me; and in so doing, he violated the following aforementioned statutes again, namely:  USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 287 – 291**

99.    I restate and reincorporate by reference 1 – 98.

Lawson, in 2019, after Hadel's Finland school was sent the simple webpages-proof demonstrating that since 2016 she had been engaging in academic fraud by claiming that she was a postdoctoral student who obtained a PhD from Harvard, threatened to charge me with criminal harassment and criminal stalking, on the basis of his claim that Hadel had a PhD from Harvard.  He sustained my no-trespass for another 1 year.  This was his pretext to continue to harm me; and in so doing, he violated the following aforementioned statutes again, namely:  USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 292– 296**

100.    I restate and reincorporate by reference 1 – 99.

Regan, in early 2017, sustained my no-trespass for another 1 year upon learning of my lawsuit against my then-landlord Amy Thompson, who at that time was a media-services employee at the university.  Thompson violated a multitude of serious health-code statutes, and many serious statutes regarding the civil conduct of landlords.  Thompson's then boyfriend of Florida was the police-chief of a nearby college, and conveyed my lawsuit to the Harvard police.  This was his pretext to continue to

harm me; and in so doing, he violated the following aforementioned statutes again, namely: USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 297– 301**

101.    I restate and reincorporate by reference 1 – 100.

Regan, in late 2017, sustained my no-trespass for another 1 year, and escalated it to include campus-grounds, upon being conveyed that university-employee defendant Barbara Fees, regarding my 4-5 minute polite conversation with her in a hallway, which was videoed by the ceiling camera, conveyed to employee John O'Connor that she was "uncomfortable" with me. This was his pretext to continue to harm me; and in so doing, he violated the following aforementioned statutes again, namely: USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 302 – 303**

102.    I restate and reincorporate by reference 1 – 101.

Chalmers filed an criminal complaint (1708CR001045) against me at Brighton District Court, citing that I had "trespassed", and in the content of his complaint (per university-police record 2017-0002920A) that I "harassed" Fees, and that my Asperger's is the reason for my "problems on

campus".  Therefore, Chalmers' disability-discrimination, where he conflates ASD with misconduct, is in violation USC 42 s12132 and MGL c272 s98, because misconduct is not an aspect of the criteria of ASD (per DSM-V, 299.00 (F84.0)), and because there was no misconduct.  The judge dismissed all aspects of the complaint prior to arraignment, stated that I did not engage in any degree of civil misconduct nor criminal misconduct, criticized Fee's claims with "He was just talking to people", and that I should be permitted to resume use of the university for the development of my life.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 304 – 305**

103.  I restate and reincorporate by reference 1 – 102.

Pignone reviewed and approved of the aforementioned (*102*) about Chalmers per university-police record 2017-0002920A, and as such violated USC 42 s12132 and MGL c272 s98 for the same reasons that Chalmers did.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 306 – 307**

104.  I restate and reincorporate by reference 1 – 103.

Fees interpreted my Asperger's non-verbal symptomology, such as my blunted affect and intense visual gaze, during my 4-5 minute polite conversation with her, and my subsequent request of a catering employee of hers if there was an open position for an acquaintance of mine, as being such that they warranted her reporting this to a campus security staff, and responding to the ensuing university-police inquiry..  As such, she engaged in disability-discrimination in violation of USC 42 s12132 and MGL

c272 s98, because she interpreted benign aspects of benign mental illness as warranting security involvement and university-police involvement.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction requiring the defendant to attend a program of education on disability-discrimination and to not violate USC 42 s12132 and MGL c272 s98 against anyone else.

e.  Additional orders and damages that the court may find are warranted.


### COUNTS 308 – 312

105.    I restate and reincorporate by reference 1 – 104.

Hanson sustained my no-trespass for another 1 year after learning of my Massachusetts Commission Against Discrimination (MCAD) complaint against 4 of 20+ employees at a bookstore who were persistently abusing me with severe anti-male sexist, disablist, ageist, and appearance-discriminatory statements, and physical misconduct, and after concurrently learning that a co-owner of the bookstore, Jeff Mayersohn, upon seeing me standing on a nearby sidewalk among hundreds of passers-by, contacted the university-police about me with fraudulent allegations.  As such, Hanson used the above as a pretext to continue the other officers' harm of me; and in so doing, he violated the following aforementioned statutes, namely:  USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98..

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.


### COUNTS 313 – 317

106.    I restate and reincorporate by reference 1 – 105.

Hanson sustained my no-trespass for another 1 year citing the pandemic as the reason; however university-affiliates were being permitted to use all campus grounds and, for specific purposes, buildings; and I could have done both, especially to meet with my professors.  None of the other affiliates that I knew were constrained from using campus.  As such, Hanson used the above as a pretext to continue the other officers' harm of me; and in so doing, he violated the following aforementioned statutes, namely:  USC 18 s1513(e), CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

**COUNTS 318 – 322**

107.    I restate and reincorporate by reference 1 – 106.

Despite that my no-trespass was rescinded by defendant chief Victor Clay in 10/2021, it was reinstated after the police were informed by O'Connor that I filed a professional complaint of disability-discrimination against a guest-services employee, Leanne Giannino, who I had known since 2016, and spoke with dozens of times, and who abruptly decided to verbally abuse me with severe disablist statements about my Asperger's during my 5-6 minute talk with her.  As such, the university-police used the above as a pretext to continue their harm against me; and in so doing, they violated the following aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction requiring the defendant to rescind my no-trespass.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 323 – 327**

108.    I restate and reincorporate by reference 1 – 107.

Via telephone in 5/2023, and at his request via text-message, I informed Clay about the aforementioned about Lawson; and he asked me to text-message him all of my documents about Lawson.  He stated that he knew about the no-trespass, and would likely rescind it but that he first had to speak with others about it.  I then filed a lawsuit at Middlesex Superior Court against the defendant, and he said to me that he was told by the defendant's general counsel to not communicate with me again. Therefore, he supported the reinstating of my no-trespass, and in so doing perpetuated the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction requiring the defendant to rescind my no-trespass.

e.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

f.  Additional orders and damages that the court may find are warranted.

### COUNTS 323 – 327

109.    I restate and reincorporate by reference 1 – 108.

Cassell, despite that my no-trespass was rescinded in 10/2021, verbally assailed me on campus in early 2022, and again in early 2023, both of which I conveyed to Clay via email, with an array of hostile statements that I had a no-trespass, was not supposed to be on campus, demanded that I leave, conveyed false allegations about me, etc., much of which I have on video.  At the beginning of her conduct in 2022, I politely informed her that I did not have a no-trespass; and she hostilely stated that she was not told that.  In 2023, she repeated and escalated her abuse despite the aforementioned.  Therefore, the university-police elected to not convey to the security company that works on campus, Securitas, that my no-trespass was rescinded, in order to cause abusive interactions like this.  As such, this harassment-by-proxy is a perpetuation of the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.

**COUNTS 328 – 332**

110.    I restate and reincorporate by reference 1 – 109.

The university-police did not inform me that another no-trespass was issued against me about my 4/2023 disability-discrimination complaint against Giannino.  It was not until I was on campus in late 5/2023 during a graduation ceremony that I learned of this, via being verbally assailed and physically encroached upon by 3 officers (James Pignone, Kevin Healy, and another) for approximately 30 minutes amid hundreds of people at the ceremony.  Therefore, the university-police elected to not convey the no-trespass to me in order to cause an abusive interaction like this.  As such, this harassment-by-proxy is a perpetuation of the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e. Additional orders and damages that the court may find are warranted.

**COUNTS 333– 337**

111.    I restate and reincorporate by reference 1 – 110.

The university-police, as I later learned from Brighton District Court, used a patently inaccurate postal-mailing address for me, regarding their aforementioned late 2017 criminal complaint (1708CR001045) against me at that court, resulting in my not receiving the summons.  Moreover, the court notified them that the court's mailing of the summons to me was returned to the court; yet the university-police, despite having my email address and telephone number since 3/2015, did not inform me of this, nor did they provide the court with either.  This resulted in a default-warrant being issued against me, and for over 1 month, until I by happenstance emailed Regan about the status of my no-trespass, at which time he emailed me to "surrender" myself to the court because there was a "default-warrant" issued against me, and notified me of the above criminal complaint.  Moreover, he

falsely told me to go to Cambridge District Court, which I did via 2 hours of roundtrip walking through immense snow, after which he told me to go to Brighton District Court, which I did 2 days later via another 2 hours of roundtrip walking through immense snow.  As such, this multifaceted harassment-by-proxy is a perpetuation of the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 338 – 342**

112.    I restate and reincorporate by reference 1 – 111.

In 3/2015, Lawson did not inform me via telephone nor email that he issued a no-trespass against me, despite that he had my contact information; and it was not until I went to Widener Library that I found, via being verbally assailed and physically menaced by officer Steve Fumicello over approximately 30 minutes, that he had.  Therefore, he elected to not convey the no-trespass to me in order to cause an abusive interaction like this.  As such, this multifaceted harassment-by-proxy is a perpetuation of the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 343**

113.    I restate and reincorporate by reference 1 – 112.

Defamation.  Defendant dean Robert Neugeboren emailed me that Regan conveyed to him that I committed crime on campus and was a threat to the campus community, and I was then expelled from

the university by Neugeboren (I was enrolled in the continuing education program as an alternative to not being permitted to enroll elsewhere).  After weeks of discussion with Neugeboren, he reinstated me, but concurrently abused me, including stating that I could not interact with students even "off campus".  All of this entailed substantial psychological harm, and substantial practical harm.  As such, Regan engaged in intentional defamation against me that caused substantial harm to me.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 344 – 346**

114.    I restate and reincorporate by reference 1 – 113.

Defamation.  My two primary private-study arrangements of several years with law professor Lloyd Weinreb and English literature professor Theo Theoharis were eventually subverted by the defamatory statements of Riley and Hanson to professor Weinreb, and Regan to professor Theoharis.  This entailed substantial psychological harm, and substantial practical harm.  As such, the Riley, Hanson, and Regan engaged in intentional defamation against me that caused substantial harm to me.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 347 – 349**

115.    I restate and reincorporate by reference 1 – 114.

Defamation.  Lawson and Twomey expressed defamation against me to philosophy professors Selim Berker, Thomas Scanlon, and Sean Kelly, as each demonstrated to me via email.  Each concurrently emailed me that I was no longer permitted to be involved with the philosophy department.  Berker emailed me this would continue even if my no-trespass was rescinded, and Kelly emailed me that

he could not process my admissions-application because of this, including if my no-trespass was rescinded.  These three instances of defamation entailed substantial psychological harm, and substantial practical harm.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages that the court may find are warranted.

**COUNTS 350 – 354**

116.    I restate and reincorporate by reference 1 – 115.

Despite that Clay per (*44*) asked me to text-message him my documents about Lawson, I received a postal-letter from defendant officer John Fulkerson stating that if I use a telephone to communicate with anyone at the university "for the purpose of harassment and annoyance" "it is a crime punishable by fine and imprisonment" and "will subject you to arrest and prosecution".  Aside, this statute does not entail "fine *and* imprisonment", and will not necessarily subject a person to "arrest and prosecution".  Fulkerson caused me harm via fraud, and concurrent psychological harassment.  As such, this harassment-by-proxy is a perpetuation of the following violations of the aforementioned statutes, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages and damages that the court may find are warranted.

**COUNTS 355 – 359**

117.    I restate and reincorporate by reference 1 – 116.

Despite that Mohamad left campus 2016, Regan sustained my no-trespass for another 1 year after I conveyed a professional complaint against him to the Title IX office in 2018.  This was his pretext

to continue to harm me; and in so doing, he violated the aforementioned statutes again, namely:  CFR 34 s106.71, USC 42 s2000a-2, USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from practicing law-enforcement in Massachusetts.

e.  Additional orders and damages and damages that the court may find are warranted.

### COUNTS 360 – 361

118.    I restate and reincorporate by reference 1 – 117.

Via information and belief, O'Connor's motivation for orchestrating his police-report about me regarding Fees is his knowledge that I have Asperger's, and his belief that my Asperger's causes me to be socially harmful.  This is disability-discrimination in violation of USC 42 s12132 and MGL c272 s98, because social harm (anti-social conduct) is not an aspect of the diagnostic criteria of Asperger's.

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  General damages.

c.  Punitive damages

d.  An injunction requiring the defendant to attend a program of education on disability-discrimination and to not violate USC 42 s12132 and MGL c272 s98 against anyone else.

e.  Additional orders and damages and damages that the court may find are warranted.

### COUNT 362

119.    I restate and reincorporate by reference 1 – 118.

Via information and belief, O'Connor had knowledge that his police action against me, regarding Giannino, would result in the issuance of a no-trespass against me, akin to his police action against me in 2017 resulted in a criminal complaint against me, another 1 year of a no-trespass, and an escalation of the constraint of my no-trespass to include campus grounds.  However in this instance, I conveyed Giannino's violations of USC 42 s12132 and MGL c272 s98 via email to Clay on the day that I

conveyed her violations to the dean.  As such, he violated USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, via his retaliatory police action.

"USC 18 s1513(e) – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

Due to the aforementioned, I request the following relief:

a.  Judgment on the violations.

b.  Criminal charges.

c.  General damages.

d.  Punitive damages

d.  An injunction requiring the defendant to attend a program of education on disability-discrimination and to not violate USC 42 s12132 and MGL c272 s98 against anyone else.

f.  Additional orders and damages that the court may find are warranted.


### COUNTS 363 – 366

120.    I restate and reincorporate by reference 1 – 119.

From 5/2023 to the present, a multitude of times, I emailed the university's general-counsel requesting that my no-trespass be rescinded on the bases of what I discuss above about Giannino.  They did not do so despite being the only administration department of the university that has the authority to do so.  Moreover, they did not advise Clay to do so, and instead, advised him to discontinue communicating with me, and to sustain my no-trespass, which is the same as issuing it, because they have the authority to rescind it.  As such, I have endured a federally violative no-trespass for 1 year 6 months because of their opinion that it should be sustained.  As such, they have engaged in the following aforementioned violations by perpetuated them:  USC 42 s12203, USC 42 s12132, and MGL c272 s98.

Moreover, because I presented the federal violations of Mohamad, Hadel, and Giannino to the university-police at the outset – that is, prior to the no-trespasses being issued against me – they have engaged in violating USC 18 s1513(e) by severely interfering with, and severely damaging, the core of my life, via their retaliatory no-trespass.

"USC 18 s1513 – Retaliating against a witness, victim, or an informant
(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law-enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. Criminal charges.

c. General damages.

d. Punitive damages

e. An injunction requiring the defendant to rescind my no-trespass and to not violate USC 42 s12132 and MGL c272 s98 against anyone else.

f. Additional orders and damages that the court may find are warranted.

### COUNT 367

121.    I restate and reincorporate by reference 1 – 120.

In 4/2023, Leanne Giannino, who is employed by the university in the Chao Center of the business school, and who as such the university is responsible for regarding her conduct, engaged in patent disability-discrimination against me on campus, in violation of USC 42 s12132 and MGL c272 s98.

Due to the aforementioned, I request the following relief:

a. Judgment on the violations.

b. General damages.

c. Punitive damages

d. An injunction requiring the defendant to attend a program of education on disability-discrimination and to not violate USC 42 s12132 and MGL c272 s98 against anyone else.

e. Additional orders and damages that the court may find are warranted.

### COUNTS 368 – 370

122.    I restate and reincorporate by reference 1 – 121.

Per the above (*36 – 36e*), Lawson, and/or John Doe 1, violated the following MGL c266 s37E(c) three times.

"MGL c266 s37E:  (c) Whoever, with intent to defraud, obtains personal identifying information about another person without the express authorization of such person, with the intent to pose as such person or who obtains personal identifying information about a person without the express authorization of such person in order to assist another to pose as such person in order to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of the crime of identity fraud and shall be punished by a fine of not more than $5,000 or imprisonment in a house of correction for not more than two and one-half years, or by both such fine and imprisonment."

1 count for impersonating Ryan, 1 count for impersonating the MDAO, and 1 count for impersonation as an assistant district attorney.

This court via USC 28 s1367(a) has jurisdiction over this violation.

Due to the aforementioned, I request the following relief:

a.   Judgment on the violations.

b.   Criminal charges.

c.   General damages.

d.   Punitive damages

d.   An injunction prohibiting the defendant(s) from practicing law-enforcement in Massachusetts.

f.   Additional orders and damages that the court may find are warranted.

**VI.**
**REQUEST FOR BENCH TRIAL**

I request a bench-trial on the aforementioned violations.

Submitted by,

Dan Howitt
11/30/24

CERTIFICATE OF SERVICE
I served this document today to defendants' attorney William Fick at wfick@fickmarx.com.

Dan Howitt
11/30/24